IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIWAN ALLEN, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No.: 1:24-cv-5348 ) ) |
| v. | ) Judge Sharon Johnson Coleman ) |
| MIDWEST EXPRESS CARE INC. d/b/a MIDWEST EXPRESS CLINIC | ) Magistrate Judge Young B. Kim ) ) |
| Defendant. | ) ) |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT</u>**

**INTRODUCTION**

Plaintiff Tiwan Allen ("**Allen**") visited a public website maintained by Defendant Midwest Express Care Inc., d/b/a Midwest Express Clinic ("**Midwest Express Clinic**"). Allen alleges that while visiting the website, she searched for information related to the medical treatment she was seeking and that the Midwest Express Clinic's website used Pixels and other tracking technology to send information about her searches to Facebook and, perhaps, others. According to Allen, she received targeted ads from either Facebook or Instagram concerning those searches after using Midwest Express Clinic's website. Allen contends Midwest Express Clinic's use of Pixels violates her rights under the federal Wiretap Act, as well as Illinois statutory and common law.

But Allen's allegations do not add up to any cause of action. In fact, Allen pleads herself out of court. Allen's claims under the Wiretap Act and the Illinois Eavesdropping Act fail as a matter of law because those statutes prohibit only third parties from intercepting communications. They do not prohibit a party to a communication from disclosing the

communication to others. Although the Wiretap Act authorizes a claim against a party who intercepted the communication for the purpose of committing a crime or tort, there is no plausible allegation that Midwest Express Clinic used Pixels for an impermissible purpose. Allen's contention that Midwest Express Clinic's use of Pixels constitutes a crime under HIPAA is based on a guidance document that a federal court has invalidated. Moreover, Allen does not state a claim under the Illinois Eavesdropping Act because the communications alleged here are not oral communications and therefore fall outside the statute's scope. Thus, Allen's statutory claims fail as a matter of law.

Allen's common-law claims fare no better. Allen's claim for negligence fails because she has not plausibly alleged a duty by a website owner to maintain the confidentiality of communications with that website. Even if the website communications related to Allen's own medical condition or treatment, Illinois courts have declined to recognize a common-law claim for violating physician-patient confidentiality. Allen's claim for unjust enrichment also fails because she does not plausibly allege that the value of information communicated to Midwest Express Clinic's website lost value through Midwest Express Clinic's action. And unjust enrichment is not even an independent cause of action under Illinois law. Because Allen's other claims fail as a matter of law, her unjust enrichment claim necessarily fails as well.

Accordingly, the Court should dismiss Allen's Complaint.

## PLAINTIFF'S ALLEGATIONS[1]

Midwest Express Clinic operates urgent care clinics in Illinois and Indiana. (Class Action Complaint, ECF No. 1 ("**Compl.**") ¶ 22.) Allen is an Illinois resident who has used Midwest

---

[1] Midwest Express will assume the truth of the allegations only for purposes of this Motion to Dismiss and reserves the right to challenge the truth of those allegations in any future motion, hearing, or trial.

2

Express Clinic's services at various times, beginning around 2019. (*Id.* ¶¶ 21, 179.) Allen has used Midwest Express Clinic's website to request appointments and to search for information about medical conditions. (*Id.* ¶¶ 180–83.) Allen alleges that she has used Midwest Express Clinic's website at various times, most recently in January 2024. (*Id.* ¶ 178.)

Allen has a Facebook account, which she has used since 2010. (*Id.* ¶ 184.) Allen alleges that she has received targeted advertisements on Facebook or Instagram (she apparently does not recall which) relating to Midwest Express Clinic and certain medical conditions. (*Id.* ¶ 191.) According to Allen, she received those targeted advertisements because Midwest Express Clinic used on its website Meta Pixels. (*Id.* ¶ 186–89.)

As alleged by Allen, Pixels are lines of computer code that Facebook integrates into various websites to track activity on those websites. (*Id.* ¶ 32.) The Pixels also track information that Facebook could use to identify the user conducting the website searches, specifically, the user's Facebook ID and IP address. (*Id.* ¶ 10, 47, 49.) Meta describes Pixels on its website as follows:

> The Meta Pixel is a piece of code on your website that can help you better understand the effectiveness of your advertising and the actions people take on your site, like visiting a page or adding an item to their cart. You'll also be able to see when customers took an action after seeing your ad on Facebook and Instagram, which can help you with retargeting. And when you use the Conversions API alongside the Pixel, it creates a more reliable connection that helps the delivery system decrease your costs.

(http://www.Facebook.com/business/tools/meta-pixel (last visited September 23, 2024).)

Allen also alleges that Midwest Express Clinic's website integrates tools provided by Google, but sdoes not allege she received any targeted ads connected with Google. (*Id.* ¶¶ 7, 191.)

3

# ARGUMENT

**I.     Standard for Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint cannot survive a motion to dismiss for failure to state a claim unless it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 555 (alterations in original, citations omitted). In evaluating a complaint, a court must accept as true all well-pleaded allegations and construe those allegations in favor of the plaintiff, but a court need not ignore allegations that undermine a claim. *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992).

**II.    Allen's fails to allege that Midwest Express Clinic violated the federal Wiretap Act.**

The Electronic Communications Privacy Act (the "**Wiretap Act**") provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511. Here, Allen's claim fails because there was no unauthorized interception, use, or disclosure of an electronic communication in violation of the Wiretap Act.

**A.    The Wiretap Act does not apply to parties to the communication.**

Under the Wiretap Act, it is not unlawful for a person "to intercept a wire, oral, or electronic communication where such person is a party to the communication … unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Allen alleges that Midwest Express Clinic was a party to the communications that

4

form the basis for her claims. (Compl. ¶ 238.) Accordingly, Midwest Express Clinic cannot be liable under the Wiretap Act unless Allen plausibly alleges Midwest Express Clinic intercepted her communications with it for the purpose of committing a crime or tort. 18 U.S.C. § 2511(2)(d).

### B. Allen does not plausibly allege that Midwest Express Clinic used Pixels for the purpose of committing a crime or tort.

Allen tries to avoid the party exception to the Wiretap Act by alleging that Midwest Express Clinic intercepted her communications with Midwest Express Clinic's website for the purpose of committing a criminal violation of HIPAA. (Compl. ¶ 239.) More specifically, Allen alleges that Midwest Express Clinic knowingly disclosed Allen's Individually Identifiable Health Information ("**IIHI**"). (*Id.*) Allen's allegations are insufficient to plead the commission of a crime because the allegations rely on an incorrect—and rejected—interpretation of IIHI, and because Allen fails to plead Midwest Express Clinic acted with the mens rea required to commit a crime.

#### *1. Midwest Express Clinic's did not disclose Allen's IIHI.*

HIPAA defines IIHI as Protected Health Information ("**PHI**") that (1) "relates to" an individual's "past, present, or future physical or mental health or condition," the individual's receipt of "health care," or the individual's "payment for" healthcare; *and* (2) "identifies the individual" or provides "a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d(6). In other words, PHI becomes IIHI if two conditions are met:

(1) the PHI relates to the individual's "past, present, or future physical or mental health or condition," their receipt of healthcare, and/or their payment for healthcare; *and*

(2) the PHI "identifies" the individual or could reasonably "be used to identify" them.

5

*See id*. Thus, information must satisfy *both* the "relates to" clause and the "identifies" clause to constitute IIHI. *Id.*

Allen alleges that information about her interactions with Midwest Express Clinic's website reveals IIHI because the Pixels installed on the website recorded her IP address. (Compl. ¶¶ 45, 49.) Allen relies on a guidance bulletin issued by the U.S. Department of Health and Human Services to support that contention. (*Id.* ¶ 45, n. 13 (citing *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*).) Allen acknowledges that a federal court recently vacated that guidance. *Am. Hosp. Ass'n v. Becerra*, 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024). But Allen contends that the decision is limited to unauthenticated public webpages and so does not affect her claims. (Compl. ¶ 45, n. 13.)

In fact, the decision is not so limited. The Court makes clear that the "mere fact that an online tracking technology connects the IP address of a user's device (or other identifying information) with a visit to a webpage addressing specific health conditions or listing health care providers is not sufficient … to constitute IIHI." *Becerra*, 2024 WL 3075865, at *7. The court also rejected the Department of Health and Human Services' revision of the guidance, which stated that information constitutes IIHI if it connects an individual's IP address with a visit to a webpage with the intent to address the visitor's specific health condition or healthcare providers. *Id.* A website owner does not know the intent of those who visit its public website.

Even if the decision were limited to interactions with unauthenticated webpages, nothing in Allen's Complaint alleges that she was using a "user-authenticated webpage," rather than an "unauthenticated webpage." As used in the bulletin at issue, the term "unauthenticated webpages" refers to "webpages that are publicly accessible without first requiring a user to log in to such webpage," while the term "user-authenticated webpages" refers to "webpages that users can access

6

only *after* they log in to the webpage, such as by entering a unique user ID and password or other credentials."

Much of Allen's Complaint is devoted to providing examples of how the Pixel technology operates, using examples of an unknown individual's browsing on the publicly available website. (Compl. ¶¶ 57–58, 75–96.) Allen does not allege there were her searches or that the searches were conducted after logging in to a secure section of the website. Thus, the mere allegation that Pixel technology links a user's IP address with the user's browsing history on the website does not establish collection of IIHI. *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html, at n. 11, 12 (last visited September 23, 2024).

Nor does the collection of a user's Facebook ID support an inference that Pixel technology collects IIHI. A user's Facebook ID is assigned by Facebook and is meaningful only to Facebook. To the extent the ID reveals to Facebook identifying information about an individual, that results from the individual's voluntary sharing of information with Facebook, not from any action of Midwest Express Clinic. Thus, there is no basis to find Midwest Express Clinic unlawfully disclosed IIHI simply because Allen voluntarily disclosed information about herself to Facebook.

Allen's Complaint materially differs from a complaint another court in this district found adequate to state a claim for relief. *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023). The court dismissed the original version of Kurowski's complaint, finding the allegations that a healthcare provider transmitted "IP addresses, cookie identifiers, device identifiers, account numbers, URLs, and browser fingerprints … to third parties like Facebook, Google, and Bidtellect" inadequate to state a claim under the Wiretap Act. *Id.* at *2.

7

The court "found no basis in the complaint to support a plausible inference that such information (at least without more) constituted IIHI" and "declined to rely on guidance from the Department of Health and Human Services … finding that the guidance did not warrant deference in interpreting the statute." *Id.* The court thus rejected the guidance Allen cites in paragraph 45 of the Complaint.

Only after Kurowski amended her complaint to allege that she used a portion of the healthcare provider's website available only to patients and that the healthcare provider transmitted to third parties the name, location, and specialty of her physician did the court find the allegations adequate to state a claim for relief. Those allegations are absent from Allen's Complaint, which is thus inadequate, as a matter of law.

### 2. *Midwest Express Clinic did not act with the mens rea necessary for a crime.*

The Seventh Circuit has held that the Wiretap Act cannot apply to a party intercepting a communication, unless the party's "purpose in doing so is to commit a crime or a tort." *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995). In that case, the Seventh Circuit affirmed the dismissal of a Wiretap Act claim under the exception based on the following analysis: "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely." *Id.* "But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine." *Id.* "The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers." *Id.*

District courts have likewise rejected application of the Wiretap Act's crime-tort exception when a plaintiff fails to plead that the defendant acted with the purpose of committing a crime or tort. For example, in *In re DoubleClick Inc. Privacy Litigation*, the plaintiffs attempted "to meet § 2511(2)(d)'s 'purpose' requirement by arguing that their six non-Wiretap

8

Act claims against DoubleClick 'plead conduct that has underlying it a tortious purpose and/or that translates into tortious acts." 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001). "In other words, by virtue of its tortious acts, DoubleClick must have had a tortious purpose." *Id.* Relying on the Seventh Circuit's decision in *Desnick*, the court rejected that argument, holding "Section 2511(2)(d)'s legislative history makes clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *Id.* The court further held "the legislative record suggests that the element of 'tortious' or 'criminal' *mens rea* is required to establish a prohibited purpose under § 2511(2)(d)." *Id.*

The court therefore found the plaintiffs had not adequately alleged their Wiretap Act claim. "DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial websites." *Id.* at 519. "If any of its practices ultimately prove tortious, then DoubleClick may be liable for the resulting damage." *Id.* "However, a culpable mind does not accompany every tortious act." *Id.*

More recently, in *Katz-Lacabe v. Oracle America, Inc.*, the court dismissed plaintiffs' federal Wiretap Act claim. No. 22-cv-04792-RS. 2024 WL 1471299, at *2 (N.D. Cal. Apr. 3, 2024). The court rejected plaintiffs' arguments that the Wiretap Act's tortious or criminal conduct exception should apply and dismissed the claim without leave to amend, for the same overarching reason: "Plaintiffs fail to plausibly allege Oracle's underlying motivation in collecting and selling data about internet users was anything other than to generate revenue." *Id.* at *3 (citing *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 519; *In re Google Inc. Gmail Litig.*, No. 13–MD–02430–LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)); *see also id.* at *5 (same; "The fact data collection or sales might at some later point be deemed tortious does not justify

9

application of the crime-tort exception."); *Cohen v. Casper Sleep Inc.*, No. 17-cv-9325, -9389, -9391, 2018 WL 33928772018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (rejecting argument that tortious or criminal conduct exception should apply to alleged internet tracking "because Defendants did not intercept communications 'for the purpose' of committing a crime or tort.").

As explained in these cases, merely acting for financial purposes cannot alone invoke the exception. Here, Allen alleges that Midwest Express Clinic acted for "commercial advantage to increase revenue from existing patients and gain new patients." (Compl. ¶ 243.) Thus, even if Allen could show that Midwest Express Clinic's actions amounted to a potential legal violation (they cannot), it does not mean that Plaintiffs have met the requirements of the federal Wiretap Act exclusion.

Two recent decisions have allowed Wiretap Act claims against healthcare providers for using digital analytical tools on their websites to survive motions to dismiss. *See Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023); *Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024). Those decisions, however, fail to correctly apply *Desnick's* analysis of the crime/tort exception. In *Kurowski*, the court incorrectly allowed the tortious or criminal conduct exception analysis to be driven by whether the alleged interception might have violated the law, rather than the defendant's alleged purpose for making the interception. *Kurowski*, 2023 WL 8544084, at *3 (finding exception applied because plaintiffs had alleged "individually identifiable health information" was at issue under 42 U.S.C. § 1320d-6, and thus also "[a]ll of these allegations, taken together, are sufficient to invoke the HIPAA-exception-to-the-party-exception quoted earlier"); *see also Hartley*, 2024 WL 1886909, at *2 (allowing Wiretap Act claim to survive dismissal where plaintiff made "plausible allegations of IIHI [individually identifiable health information] that were acquired by Defendant

10

and then disclosed to Meta," likewise without analyzing *Desnick*). Respectfully, allowing an alleged legal violation to drive the exception analysis is contrary to *Desnick*, which holds that application of the exception should focus, in accord with the statutory text, on the defendant's alleged *purpose* for making the interception. *Desnick* 44 F.3d at 1353–54; *see also* 18 U.S.C. § 2511(2)(d) (providing that the exception applies only when the "communication is intercepted *for the purpose of* committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State") (emphasis added).

Lastly, the exception could never apply here, because the underlying criminal or tortious acts must be *distinct* from the alleged wiretapping. *See Okash v. Essentia Health*, No. 23-482 (JRT/LIB), 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024) (dismissing federal Wiretap Act claim because plaintiff failed to allege independent criminal or tortious conduct); *Jurgens*, 2017 WL 5277679, at *5, n. 4 ("But Plaintiff has neither alleged nor argued that Defendant intercepted or disclosed her communications for the purpose of committing a crime or a tort independent of the interception itself, and no such purpose is evident from the complaint."); *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party"). Here, the only crime alleged is the wiretapping itself.

Accordingly, Allen's Wiretap Act claim should be dismissed.

**III. Allen's Illinois Eavesdropping Act claim fails because Midwest Express Clinic was a party to the communications and the communications were not oral.**

Plaintiff's claim for violation of the Illinois Eavesdropping Act likewise fails as a matter of law. The Eavesdropping Act forbids any person from intentionally intercepting, recording, or transcribing "in a surreptitious manner, any private electronic communication to which he or she

11

is not a party" without the consent of all parties to the communication. 720 ILCS 5/14-2(a)(3). A private electronic communication is any transfer of "signs, signals, writing, images, sounds, data or intelligence" by a system when the sending or receiving party "intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(e). Under the Eavesdropping Act, an interception is surreptitious when a communication is "obtained or made by stealth or deceptions, or executed through secrecy or concealment." 720 ILCS 5/14-1(g).

Applying the plain language of the Eavesdropping Act, Allen's claim fails for two reasons. First, the Eavesdropping Act applies only to a person who is "not a party" to the communication. 720 ILCS § 5/1 2(a)(3). And " unlike the federal Wiretap Act, the Illinois statute does not have a criminal or tortious exception to the party exception." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 853 (N.D. Ill. 2023). Allen alleges she believed she was communicating with Midwest Express Clinic. (Compl. ¶ 281.) Because Allen alleges Midwest Express Clinic was a party to the communication, Midwest Express Clinic cannot have violated the Eavesdropping Act. *Zak v. Bose Corp.*, No. 17-cv-02928, 2020 WL 2762552, at *3 (N.D Ill. May 27, 2020) (dismissing claim for violation of Illinois Eavesdropping Act, with prejudice, for failing to allege that the defendant was not party to communication); *see also Vasil v. Kiip, Inc.*, No. 16-CV-09937, 2018 WL 1156328, at *6 (N.D. Ill. Mar. 5, 2018) (dismissing Illinois Eavesdropping Act claim because it does not preclude party to communications from recording or transcribing it).

Second, the Illinois Eavesdropping Act "only applies to oral communications." *A.D. v. Aspen Dental Management, Inc.*, No. 24 C 1404, 2024 WL 4119153, at *4 (N.D. Ill. Sept. 9, 2024). In *Aspen Dental*, the court reviewed the Illinois Eavesdropping Act's definitions of

"private conversation" and "private electronic communication" and concluded that that statute "does not apply to the electronic communications about which Plaintiffs complain." *Id.* The same is true in this case.

IV. **Negligence Claim.**

To plead a claim for negligence, a plaintiff must allege that "the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *First Springfield Bank & Tr. v. Galman*, 188 Ill. 2d 252, 256, 720 N.E.2d 1068, 1071 (1999). Allen's claim fails at the first element because Allen does not plausibly allege that Midwest Express Clinic owed her a duty. Allen contends that Midwest Express Clinic has "duties as a medical provider." (Compl. ¶ 255.) Illinois courts, however, have not recognized a tort claim for breach of physician-patient confidentiality. *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023).

Nor do any alleged violations of HIPAA support a negligence claim. In some cases, violation of a duty imposed by statute may support a negligence claim. *Bier v. Leanna Lakeside Prop. Ass'n*, 305 Ill. App. 3d 45, 58, 711 N.E.2d 773, 783 (2d Dist. 1999), *as modified on denial of reh'g* (May 19, 1999). When a statutory violation is shown, the Court will focus on if: "(1) the plaintiff is a member of the class of persons protected by the statute, (2) the plaintiff's injury is the type the statute intended to protect against, and (3) the defendant's violation of the statute proximately caused the injury." *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, No. 23 CV 1108, 2024 WL 182211, at *3–4 (N.D. Ill. Jan. 17, 2024).

Because HIPAA does not support a private cause of action the Court should dismiss the negligence claim. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019).

V. **Unjust Enrichment Claim.**

To state a claim for unjust enrichment, a plaintiff must allege that the defendant "has

13

unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). Allen alleges that she "conferred a monetary benefit upon Defendant in the form of valuable sensitive medical information that Defendant collected from Plaintiff and Class members under the guise of keeping this information private." (Compl. ¶ 263.) She also alleges that she and Class Members "would not have used Defendant's services or would have paid less for those services, if they had known that Defendant would collect, use, and disclose this information to third parties." (*Id.* ¶ 264.) But Allen does not allege that she had any plans to monetize her Internet browsing information or that Midwest Express Clinic's collection of that information diminished her ability to monetize it.

Courts have rejected similar unjust enrichment claims because while "browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 13 CIV. 6592 (NRB), 2016 WL 5080131, at *6 (S.D.N.Y. Aug. 17, 2016), *aff'd, as amended* (May 3, 2017), 684 Fed. Appx. 32 (2d Cir. 2017); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 149 (3d Cir. 2015) (affirming dismissal of claims under the Computer Fraud and Abuse Act because plaintiff did "not allege that they sought to monetize information about their internet usage"). Courts have thus "routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'" *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (quoting *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017).

14

Allen's unjust enrichment claim fails for the additional reason that "[u]njust enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). "Instead, 'if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and will "stand or fall with the related claim.'" *Bakopoulos v. Mars Petcare US, Inc.*, 20 CV 6841, 2021 WL 2915215, at *8 (N.D. Ill. July 12, 2021) (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Here, Allen alleges the same facts in her unjust enrichment claim she alleges in her statutory claims. Because the statutory claims fail as a matter of law, so does her unjust enrichment claim.

## CONCLUSION

Allen's claims under the Wiretap Act and the Illinois Eavesdropping Act are foreclosed because Allen alleges that Midwest Express Clinic was a party to the relevant communications. While the Wiretap Act (but not the Eavesdropping Act) allows a claim to go forward against a party who intercepts a communication for the purpose of committing a crime or tort, Allen has not plausibly alleged that Midwest Express Clinic did so. Moreover, her Illinois Eavesdropping Act claim fails because the alleged communications were not oral communications. Allen's negligence claims fails because she has not plausibly alleged the basis for any duty to maintain the confidentiality of her communications with a website. Finally, Allen's claim for unjust enrichment fails because she has not plausibly alleged any loss in value of her information, and because there is no other cause of action to support the derivative claim of unjust enrichment.

Dated: September 24, 2024

Respectfully submitted,
**MIDWEST EXPRESS CARE INC. d/b/a**
**MIDWEST EXPRESS CLINIC**

By: ___*/s/ Sandy L. Morris*___
One of its Attorneys

15

Sandy L. Morris (IL Bar No. 6270309)
Valentine Austriaco & Bueschel, P.C.
300 E. Randolph, Ste 3400
Chicago, IL 60601
(312) 238-9545
smorris@vablawfirm.com

Darren A. Craig (IN Bar. No. 25534-49)
Frost Brown Todd LLP
111 Monument Circle
Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
dcraig@fbtlaw.com

*Counsel for Defendant Midwest Express Care Inc.*
 *d/b/a Midwest Express Clinic*

## **CERTIFICATE OF SERVICE**

     I, Sandy L. Morris, an attorney, hereby certify that on this 24th day of September, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

                                            */s/ Sandy L. Morris*

0153485.0791071  4863-3653-4749v1