IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIWAN ALLEN, *individually and on behalf of all others similarly situated*, | |
| *Plaintiff*, | Case No. 1:24-cv-5348 |
| v. | Judge Sharon Johnson Coleman |
| MIDWEST EXPRESS CARE INC. d/b/a MIDWEST EXPRESS CLINIC, | Magistrate Judge Young B. Kim |
| *Defendant*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

**ALMEIDA LAW GROUP LLC**
Matthew J. Langley
David S. Almeida
Britany A. Kabakov
849 W. Webster Avenue
Chicago, Illinois 60614
Ph: (312) 576-3024
matt@almeidalawgroup.com
david@almeidalawgroup.com
britany@almeidalawgroup.com

*Counsel for Plaintiff & the Putative Classes*

i

**PRELIMINARY STATEMENT**

In its Motion to Dismiss, Midwest Express Care, Inc. d/b/a Midwest Express Clinic ("Midwest" or "Defendant") does ***not*** deny using numerous tracking tools on its website, midwestexpressclinic.com (the "Website"), to surreptitiously collect its patients' personally identifiable information ("PII"), protected health information ("PHI," and with PII, "Private Information") and individually identifiable health information ("IIHI"). Nor does Midwest deny that, in so doing, it divulges patients' and prospective patients' sensitive confidential information to third parties, such as Facebook and Google, without consent. Midwest's tacit admission warrants denial of its motion to dismiss as its use of Tracking Technologies,[1] as detailed in the Complaint, is unlawful under the Health Insurance Portability and Accountability Act ("HIPAA").

As for intent, Midwest made the conscious decision to partner with Facebook to install and configure Tracking Technologies to collect and disclose its patient's sensitive health information, including (i) locations where they sought treatment, (ii) information accessed about their medical conditions and treatments, (iii) scheduling medical appointments, (iv) payment of bills, and (v) the exact search terms entered into the search bar. *See, e.g.*, ¶¶ 6, 10-11, 41, 66, 73, & 139.[2] This sensitive medical information is then linked to patients' unique Facebook IDs, IP addresses, cookie identifiers, and device identifiers. *See, e.g.*, ¶¶ 10, 29 & n.18, 49 & 67. Such information is IIHI under HIPAA, 42 U.S.C. § 1320(d)(6).

As to Plaintiff Tiwan Allen specifically, she has been a patient of Midwest since 2019 and used Defendant's Website as recently as January 2024. ¶178. Without consent, Defendant

---

[1] Tracking Technologies include the Meta Pixel ("Pixel"), Google Analytics, and Google Tag Manager.

[2] All references to ¶ herein refer to Plaintiff's Class Action Complaint, ECF No. 1 ("Complaint").

1

transmitted to unauthorized third parties her Facebook ID, computer IP address, and other device and unique online identifiers to Facebook together with her patient status, specific medical conditions, information about her medical appointments, the location of her treatments, and the specific search terms she entered into the Website search bar. *See* ¶¶181-87.

Midwest attempts to avoid judicial scrutiny by arguing that the one-party exception forecloses liability and the crime-tort exception does not apply, including because the sensitive health information it disclosed was not, in fact, IIHI. ECF No. 28 at 5-8 (the "MTD"). But courts in this district, in denying motions to dismiss Electronic Communications Privacy Act ("ECPA") claims have found that the crime-tort exception applies where a defendant discloses IIHI through tracking tools, almost identical to the information Plaintiff alleged was disclosed here.[3]

Midwest relies on *American Hospital Association v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ("*AHA*"), a narrow decision out of the Northern District of Texas which has no applicability here. *AHA* addressed the Department of Health and Human Services Office of Civil Rights ("HHS") guidance ("HHS Guidance") on online tracking technologies. But *AHA* addressed only the discrete issue of online technology that discloses (i) an individual's IP address along with (ii) a visit to an unauthenticated public webpage addressing specific health conditions or healthcare providers (the "Proscribed Combination"). *Id.* at *2. Judge Pittman noted that his

---

[3] *See, e.g.*, *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (J. Kendall) ("*Aspen*") (holding disclosure of "Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties" were sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and that "[s]uch information qualifies as IIHI for purposes of HIPAA."); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024) (J. Daniel) ("*Loyola*") (holding "plaintiffs' status as medical patients, the content of their communications with LUMC's webpage, information about their medical appointments, location of treatments, specific medical providers, specific medical conditions and treatments, and other sensitive health information to third parties" qualified as IIHI).

opinion concerns *only* the "Proscribed Combination" and *not* allegations of PHI disclosure including website information that goes well beyond unauthenticated webpages (such as appointments, specific search terms, and specific location information). *Compare id.* at *17, n. 8 ("Such vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document."), *with* ¶¶ 181-87.

Even if the holding in *AHA* is to be read as broadly as Defendant attempts to stretch it, Plaintiff does not assert a claim under HIPAA nor the HHS Guidance. Rather, it is Midwest's flagrant violations of HIPAA in disclosing patients' IIHI and PHI to third parties that establish its criminal and tortious purpose such that the party exception to the ECPA is inapplicable. As the Complaint notes, the HHS guidance is cited "for reference only." ¶ 45 n.13. And Judge Kennelly found, for almost identical allegations, that Plaintiff's ECPA claim is sufficiently pled even absent the HHS Guidance. *See Kurowski v. Rush Sys. for Health*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (denying motion for judgment on the pleadings for ECPA claim after finding HHS Guidance inapplicable).

Midwest's argument that it cannot be liable under the ECPA because the allegations do not establish the requisite *mens rea* also fails. *See* MTD at 8-11. Plaintiff's allegations that Midwest installed and configured the Meta Pixel with the intent to disclose her PHI to Facebook establishes that it acted with the purpose of committing the underlying crime or tort. ¶¶ 10-11. In addition, the allegation that Midwest was motivated by financial gain does not obviate its criminal intent. Finally, as courts have consistently held, Midwest's criminal disclosure through the Pixel was separate and distinct from the improper interception at issue in Plaintiff's ECPA claim. *See Aspen*, 2024 WL 4119153, at *3 (holding that intent to violate HIPAA by disclosing PHI to third parties "is distinct from the improper interception at issue in the ECPA claim.").

Finally, Plaintiff's common law claims are likewise legally viable and plausibly alleged. Plaintiff's negligence claim is adequately pled because she alleges a duty for Defendant to safeguard her information beyond the physician-patient relationship and the allegations that her PHI diminished in value because of Defendant's unlawful disclosure is sufficient to support her unjust enrichment claim. For these reasons, the motion to dismiss should be denied in its entirety.[4]

## LEGAL STANDARD

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has raised "a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (*citing Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021) Courts must deny a motion to dismiss if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555-56 (2007)

## ARGUMENT

**I.  PLAINTIFF'S FEDERAL WIRETAP ACT CLAIM IS NOT FORECLOSED BECAUSE THE CRIME-TORT EXCEPTION APPLIES.**

Plaintiff alleges that Midwest violated the ECPA, which forbids (i) *interception* of electronic communications, (ii) *disclosure* of electronic communications and (iii) *using* the contents of those electronic communications. *See* ¶¶ 214-51. Midwest argues that there can be no ECPA liability because it was a party to the communications at issue. *See* MTD at 5. But where

---

[4] Plaintiff withdraws her claim for Violation of the Illinois Eavesdropping Statute, 720 ILCS § 5/14-1, *et seq*. (Count VI).

4

the crime-tort exception applies, that exception overrides the one-party consent rule.[5] Midwest claims that the crime-tort exception could not apply because the information it disclosed was not IIHI and the allegations do not establish that it possessed the necessary *mens rea*. MTD at 5-11. But Midwest ignores the holdings of courts in this district and nationwide, contradicts Plaintiff's well-pleaded allegations, and raises issues that necessitate discovery.

### A. Midwest Disclosed Plaintiff's IIHI in Criminal Violation of HIPAA.

Plaintiff alleges that Midwest intercepted her electronic communications for the purpose of violating HIPAA by collecting and disclosing her IIHI without consent in violation of 42 U.S.C. § 1320d-6 which imposes federal criminal liability for knowingly disclosing IIHI to third parties. *See, e.g.*, ¶¶ 116-18 & 239-42.[6] Specifically, Plaintiff alleges that Midwest disclosed her status as a medical patient, the contents of her communications with Midwest's Website (including specific terms she entered into the website search bar concerning her medical conditions), and information about her medical appointments, the location of her treatments, her specific medical conditions and treatments, and other sensitive medical information. *See, e.g.*, ¶¶ 6, 10-11, 41, 66, 73 & 139. This sensitive health information was disclosed with Plaintiff's "unique Facebook ID," which is linked to her Facebook profile, allowing Facebook to uniquely identify her and was used to send her targeted advertisements related to her medical conditions. *See* ¶¶ 67-68, 82-83 & 187-91.

---

[5] "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication ... **unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State**." 18 U.S.C. § 2511(2)(d) (emphasis added).

[6] Information is IIHI if it is PHI that (i) is "created or received by" a health care provider and (ii) either "identifies the individual" or provides a reasonable basis to identify the individual. *See* ¶ 239 (citing 42 U.S.C. § 1320d-6(A)-(B)).

5

Notably, virtually identical allegations involving disclosures of medical information and the Facebook ID via the Meta Pixel have been found to constitute IIHI by every court in this district that has considered them. *See Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024) (holding that plaintiff's allegations that defendant disclosed "that she was seeking specific medical specialists, that she sought to obtain prescriptions of various medications, that she was seeking information about sexually transmitted diseases, and alleging that Meta sold this information to entities that sent her advertisements for medications that were relevant to specific conditions for which she was being treated" were sufficient to make plausible allegations of IIHI "that were acquired by Defendant and then disclosed to Meta."); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *4 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (holding that plaintiff's allegations that defendant "transmitted the name and location of her personal physician, as well as her physician's specialty" and "that this information was, in turn, used by at least Facebook to target her with particular advertising associated with her particular health conditions" supported a plausible inference that such information constituted IIHI within the meaning of HIPAA); *Loyola*, 2024 WL 3338941, at *7 (holding that transmission of plaintiffs' status as medical patients, content of their communications with LUMC's webpage, information about their medical appointments, location of treatments, specific medical providers, specific medical conditions and treatments, and other sensitive health information to third parties qualified as IIHI for purposes of HIPAA); *Aspen*, 2024 WL 4119153, at *3 (holding that transmission of "Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties" qualified as IIHI under HIPAA).[7]

---

[7] Midwest argues that *Kurowski III* supports its position because the court found plaintiff's allegations adequate to state a claim "[o]nly after Kurowski amended her complaint to allege that

6

Plaintiff's allegations here that Midwest disclosed her IIHI to Facebook which used that information to send targeted advertisements related to her PHI are sufficient to allege disclosure of IIHI consistent with the holdings of Court's in this district and the country.[8]

**B. Plaintiff's Allegations do not Rely on HHS Guidance and the Decision in *AHA* is Inapplicable Here.**

In June 2024, the United States District Court for the Northern District of Texas issued an opinion in *AHA* reaffirming the HHS Guidance in part and vacating one discrete aspect not applicable to this case. Midwest argues that the sensitive medical information it disclosed was rendered lawful by *AHA* because that information is no longer IIHI. MTD at 5-6. However, because Plaintiff's claims are based on long-standing obligations that were not created by the HHS Guidance, nor impacted by the *AHA* decision, Defendant's argument fails.

First, Plaintiff is not suing Defendant for violating the HHS Guidance; rather, she asserts claims for violating the ECPA and common law. In fact, though Plaintiff references the HHS Guidance, she specifically states that it is cited "for reference only." ¶ 45, n. 13. Thus, whether a

---

she used a portion of the healthcare provider's website available only to patients." MTD at 8. But Judge Kennelly's analysis is not based on plaintiff's use of the "patient portal." *Kurowski III*, 2023 WL 8544084, at *3

[8] Unable to distinguish the numerous decisions nationwide that have sustained similar pixel-tracking complaints, Midwest merely ignores them. *See, e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024) (finding plaintiffs "sufficiently pleaded Defendant's intention to violate HIPAA. Plaintiffs' ECPA claim will proceed."); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *9 (S.D.N.Y. July 30, 2024) (denying motion to dismiss ECPA claim & negligence claim, ); *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024) (denying motion to dismiss ECPA claim & unjust enrichment claim); *R.C. v. Walgreen Co.*, 2024 WL 2263395 (C.D. Cal. May 9, 2024) (denying motion to dismiss ECPA & unjust enrichment claims); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *4-13 (D. Minn. Mar. 28, 2024) (similar); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *8-12, 15-18 (W.D.N.Y. Mar. 19, 2024) (similar); *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *2-10 (N.D. Cal. Feb. 12, 2024) (denying motion to dismiss in its entirety).

portion of the HHS Guidance was vacated does not address (and certainly does not resolve) the legal viability of Plaintiff's claims.

Judge Kennelly's holding in *Kurowski IV* is instructive as there the Court held that defendant disclosed plaintiffs' IIHI in violation of HIPAA even though it declined to apply the HHS Guidance. 2024 WL 3455020, at *6. Judge Kennelly explained, in denying defendant's motion for judgment on the pleadings, "the Court expressly declined to defer to this bulletin in deciding whether Kurowski had stated a claim" but "[t]he Court permitted Kurowski to proceed with her Wiretap Act claim [] when she added factual allegations that her private, care-related communications were also intercepted and transmitted in addition to the personally identifying information." *Id*.

Second, the *AHA* opinion, an administrative law decision that questioned the rulemaking process, addresses only a single discrete issue with no bearing on Plaintiff's claims. Judge Pittman specifically held that HHS exceeded its authority by issuing guidance prohibiting healthcare providers from utilizing "an online technology" that discloses (i) an individual's IP address along with (ii) a visit to an unauthenticated public webpage addressing specific health conditions or healthcare providers. *AHA*, 2024 WL 3075865 at *2. Judge Pittman labeled this "new rule" as the "Proscribed Combination." *Id.*

As Judge Pittman was careful to note, his opinion concerned *only* the "Proscribed Combination." *Id.* at *17, n. 8 ("Such vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document."). Indeed, Judge Pittman observed that the HHS Guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound." *Id.* at *4, n. 3. Among the "legally and programmatically sound" guidance that the *AHA* opinion endorses are specific prohibitions by

8

HHS against deploying tracking technologies on the following webpages: unauthenticated webpages that "permits individuals to schedule appointments or use a symptom-checking tool;" unauthenticated "login page" or the "user registration page" of a patient portal; on "bill pay" functions of an unauthenticated website; or unauthenticated health webpages that share personal identifiers such as patients' names, email addresses, or user IDs (like a Facebook ID).[9]

Contrary to Defendant's attempt to refute and to reframe Plaintiff's allegations to fit its argument, this case does **not** concern the use of unauthenticated public websites and merely the disclosure of IP addresses.[10] Rather, this case challenges Defendant's' use of Tracking Technologies to collect and disclose PHI, such as (i) online appointments, (ii) the location of treatments, (iii) patients' health conditions, symptoms and possible treatments, and (iv) specific communications patients submitted to Defendant. *See, e.g.*, ¶¶ 6, 10-11, 41, 66, 73 & 139. The *AHA* decision does not undermine the HHS Guidance prohibiting such disclosures, rather, it reinforces that such disclosures *would* reveal PHI and that HHS "[c]an and should remind covered entities that the Privacy Rule would apply in those circumstances." 2024 WL 3075865, at *14.

Finally, multiple federal courts in the wake of the *AHA* decision have continued to find that information intercepted by tracking technologies on hospital websites can constitute IIHI. *See, e.g.*, *Aspen*, 2024 WL 4119153, at *3 (denying motion to dismiss ECPA where healthcare defendant

---

[9] *See* Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, *supra,* n. 2.

[10] Midwest ignores the allegations that it disclosed Plaintiff's Facebook ID in arguing that "the mere allegation that Pixel technology links a user's IP address with the user's browsing history on the website does not establish collection of IIHI." MTD at 7. Recognizing this, Midwest attempts to argue that disclosure of Plaintiff's Facebook ID cannot support an inference that it disclosed IIHI because the Facebook ID is meaningful "only to Facebook." *Id*. However, Midwest cites no caselaw to support its argument which is contrary to the findings of courts in this District and throughout the country. *Id*. Midwest's argument is specious as Facebook *is* the third party Plaintiff alleges unlawfully received Midwest's disclosure of IIHI, including the Facebook ID.

9

used tracking technologies to collect IIHI in violation of HIPAA); *Loyola*, 2024 WL 3338941, at *6-8 (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *7 (S.D.N.Y. July 30, 2024) (denying motion to dismiss ECPA & common law claims where defendant was alleged to have collected IIHI in violation of HIPAA) (collecting cases).[11]

### C. Plaintiff's Allegations Establish that Midwest Acted with Intent to Disclose Plaintiff's IIHI in Violation of HIPAA.

Ignoring the Complaint's allegations, Midwest argues that Plaintiff has not sufficiently pled that it intercepted the communications with the purpose of committing a crime or tort. *See* MTD at 8-11. But as alleged in the Complaint, the Pixel that was installed on the Website is "customizable and programmable, meaning that the website owner controls which of its web pages contain the Pixel and which events are tracked and transmitted to Facebook." ¶ 34. Defendant purposely implemented and configured the Pixel to disclose Plaintiff's PHI together with her Facebook ID in violation of HIPAA. *See* ¶¶ 6, 10-11 & 42. This is sufficient to establish that Midwest intercepted Plaintiff's communications with the purpose of committing a crime or tort. *See Aspen*, 2024 WL 4119153, at *3 (distinguishing *Desnick v. Am. Broad. Co., Inc.*, 44 F.3d 1345 (7th Cir. 1995), and holding that defendant placed tracking technology on its website with the intent to collect and disclose users' [PHI] for purposes of financial gain, in violation of HIPAA.).

In *Kurowski IV*, on almost identical allegations, Judge Kennelly held that plaintiff had plausibly alleged that defendant acted with the conscious desire to knowingly make unauthorized disclosures of IIHI for purposes of invoking the crime-or-tort exception because plaintiff alleged that Rush "had at least some degree of control over what information would or would not be

---

[11] *See also Kane v. Univ. of Rochester*, 2024 WL 1178340, at *6 (W.D.N.Y. Mar. 19, 2024) (concluding that plaintiffs plausibly pled that use of tracking technology on unauthenticated appointment scheduling page shared IIHI to third parties); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791–93 (N.D. Cal. 2022) (finding that covered entity disclosed IIHI through tracking technology on patient portal navigation buttons on unauthenticated public website).

10

intercepted and transmitted by the tracking technologies" and "that it actively chose to employ the tracking technology on certain pages of its website that were likely to contain IIHI. 2024 WL 3455020, at *4 (holding that "[a] reasonable factfinder could infer from Rush's specific choices regarding how to employ the tracking technology that Rush "consciously desired" to intercept and transmit patients' IIHI."). Here too, Plaintiff has alleged that Midwest controlled what information would be disclosed through the Meta Pixel and chose to employ Tracking Technologies on pages that were likely to contain IIHI. *See e.g.* ¶¶ 6, 10-11, 30-39 & 42. This is sufficient to establish that Midwest acted with the purpose of disclosing Plaintiff's IIHI in violation of HIPAA.

Midwest's additional argument that it could not have had a criminal or tortious purpose because it was also motivated by making money likewise fails. *See* MTD at 6-7. District courts in the Seventh Circuit and nationwide have held that having a financial purpose does not negate a simultaneously criminal purpose. *See, e.g.*, *Aspen*, 2024 WL 4119153, at *3 (rejecting defendant's argument that its only purpose was to boost revenue and finding that "this purpose cannot be detached from the reality that Aspen achieved this improved marketing and revenue boost by disclosing Plaintiffs IIHI."); *Kurowski IV*, 2024 WL 3455020, at *4 ("[N]othing in section 2511(2)(d) requires that a party act with the *sole* purpose of committing the underlying crime or tort. Thus, even if the Court views Rush's 'purpose' in employing the tracking technologies as, for example, improving its advertising outcomes and its profit margins, that does not mean that it didn't also 'consciously desire' to make unauthorized disclosures of Kurowski's IIHI to achieve that goal.") (emphasis in original); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) ("The existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose."); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at

\*5 n.4 (D. Minn. Mar. 28, 2024) (denying motion to dismiss the ECPA and stating that "it defies common sense that a clearly harmful act could escape liability as long as it was done for profit.").[12]

Midwest claims that the crime-tort exception could never apply because the criminal or tortious act must be distinct from the alleged wiretap. MTD at 11. But Midwest misreads the Complaint's allegations which establish that the unlawful disclosure to third parties—not the interception itself—is the separate criminal and tortious act. *See, e.g.*, ¶¶ 10, 186-88 & 240-42. This is more than sufficient to establish that Midwest's unlawful disclosure was distinct from the wiretap itself. *See Aspen*, 2024 WL 4119153, at \*3 ("Even if the crime-tort exception did require an act distinct from the alleged wiretapping, Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim.")

Finally, whether Midwest had criminal or tortious intent is a factual question for discovery to be decided on a full evidentiary record. *See, e.g.*, *Kurowski III*, 2023 WL 8544084, at \*3 (observing that plaintiff "lacks the direct access to what occurs in the background on Rush's web properties"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023) ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual

---

[12] The cases that Midwest relies on are readily distinguishable. MTD at 5-8. As to *In re DoubleClick*, the case did not involve PHI but rather challenged an internet advertiser who, after an FTC investigation, was found to have "never used or disclosed consumers' PII for purposes other than those disclosed in its privacy policy" and created profiles for users that contained "only non-PHI." *See* 154 F. Supp. 2d 497, 500, 506 (S.D.N.Y. 2001).

As to *Katz-Lacabe*, Plaintiffs' allegations here are markedly different than those in that case. There, plaintiffs focused on internal statements and privacy practices to support the application of the crime-tort exception. *See* 2024 WL 1471299, at \*2. In contrast, Plaintiffs' allegations here explain how Midwest's purpose was to unlawfully disclose the contents of their communications to Meta and other third parties without their consent, which was a criminal violation of HIPAA and amounted to tortious conduct including negligence. *See, e.g.*, ¶¶ 237-49.

undertaking."). Precisely because Plaintiff "may be able to show" that the crime-tort exception applies at the fact-intensive stage, it is inappropriate to dismiss a suit at the pleading.

## II. PLAINTIFF'S COMMON LAW CLAIMS SURVIVE A MOTION TO DISMISS.

### A. Plaintiff Adequately Alleges Negligence Based on More Than Physician-Patient Confidentiality.

Midwest challenges only the first element of Plaintiff's negligence claim, *i.e.* that it owed her a duty of care. MTD at 13. But Plaintiff establishes a duty to safeguard her protected information to support her negligence claim. *See, e.g.*, ¶ 146. When determining whether there is a duty of care, courts look at (i) reasonable foreseeability of injury, (ii) likelihood of injury, (iii) magnitude of the burden of guarding against injury and (iv) consequences of placing that burden on defendant. *See Durpetti v. Menard, Inc.*, 2023 WL 4864994, at *5 (N.D. Ill. July 30, 2023).

Plaintiff alleges that Midwest owed "Plaintiff and Class Members a duty to keep their Private Information completely confidential, and to safeguard sensitive personal and medical information." ¶ 253. Midwest nevertheless argues that Plaintiff's negligence claim fails because the physician-patient relationship does not establish a common law duty of care under Illinois law. MTD at 13. However, Plaintiff's negligence claim identifies additional grounds that give rise to a duty for Midwest to keep Plaintiff's Private Information confidential.

As Plaintiff alleges, Midwest's duty stems from its "common law obligation to maintain the confidentiality of patients' PII/PHI, state and federal laws protecting the confidentiality of medical information, state and federal laws protecting the confidentiality of communications and computer data, state laws prohibiting the unauthorized use and disclosure of personal means of identification and Defendant's express and implied promises of confidentiality." ¶ 146; *see also* ¶¶ 100-09. This is sufficient to support Plaintiff's negligence claim.

13

Moreover, courts in this district recognize a common law duty to maintain reasonable security measures to prevent unauthorized disclosure of private information, which includes medical information. *See, e.g.*, *Wittmeyer v. Heartland Alliance for Human Needs & Rights*, 2024 WL 182211, *2 (N.D. Ill. Jan. 17, 2024) (recognizing a duty to protect personal information exists under Illinois common law); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) (finding plaintiffs sufficiently identified the security measures defendants fell short of implementing).

Finally, Illinois' Personal Information Protection Act ("PIPA") requires data collectors, *i.e.*, entities that handle, collect, disseminate, or otherwise deal with nonpublic personal information, to protect this information from "unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 ILCS 530/45(a); *see also* 815 ILCS 530/5. The Complaint alleges that Midwest collected Plaintiff's nonpublic personal information and disseminated it to unauthorized third parties. *See, e.g.*, ¶¶ 66, 110 & 258. Thus, Plaintiff alleges a duty to prevent the disclosure of her PHI. *See, e.g.*, *Loyola*, 2024 WL 3338941, at *7 (denying motion to dismiss negligence claim where defendant disclosed PHI to third parties via the pixel and finding PIPA requires data collectors to protect nonpublic personal information); *Aspen*, 2024 WL 4119153, at *9 (denying motion to dismiss negligence claim where plaintiffs alleged they were owed "a duty to 'exercise reasonable care to secure, safeguard and protect their highly sensitive Private Information' and that Aspen assumed a duty to protect Plaintiffs Private Information by making representations that it would not disclose Plaintiffs' Private Information without their consent").

**B.     Plaintiff has Sufficiently Alleged Her Claim for Unjust Enrichment.**

"Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust." *Cleary v.*

14

*Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Plaintiff's allegations support her unjust enrichment claim. *See, e.g.*, ¶¶ 159-69 & 264-77. As an initial matter, Plaintiff's unjust enrichment claim rests on the same improper conduct alleged in Plaintiff's ECPA and negligence claims, which are sufficiently pled, Plaintiff's unjust enrichment claim should also stand. *See Cleary*, 656 F.3d at 517 (if an unjust enrichment claim "rests on the same improper conduct alleged in another claim, then [it] will be tied to this related claim—and ... will stand or fall with the related claim."). Midwest also attacks the pleaded value of Plaintiff's Private Information, which Plaintiff supports in detail in her Complaint. *See, e.g.*, ¶¶ 159-77. Recent case law finds unjust enrichment claims well-fitted to the specific wrongful conduct alleged here.[13]

## CONCLUSION

For these reasons, this Honorable Court should deny Midwest's motion, grant leave to amend to address any pleading deficiencies and order all such other relief.[14]

Date: October 23, 2024                      Respectfully submitted,

                                                       */s/ Matthew J. Langley*
                                                       Matthew J. Langley (ARDC No. 6337129)
                                                       David S. Almeida (ARDC No. 6285557)
                                                       Britany A. Kabakov (ARDC No. 6336126)
                                                       **ALMEIDA LAW GROUP LLC**

---

[13] *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *8 (N.D. Cal. Oct. 3, 2023), *aff'd*, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1086 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 715 (D. Minn. 2023); *C. M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *6 (N.D. Cal. Jan. 19, 2024); *Kane*, 2024 WL 1178340, at *15-16 (N.Y.).

[14] Under Rule 15, courts "should freely give leave" to amend a pleading "when justice so requires." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020). While Plaintiff contends sufficient facts are pled to support each cause of action and associated damages, should the Court be persuaded to dismiss any claim, Plaintiff respectfully requests leave to file a First Amended Complaint. Plaintiff submits that this is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

        849 W. Webster Avenue
        Chicago, Illinois 60614
        Ph: (312) 576-3024
        matt@almeidalawgroup.com
        david@almeidalawgroup.com
        britany@almeidalawgroup.com

*Attorneys for Plaintiff & the Putative Classes*

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on October 23, 2024, I filed the attached with the Clerk of the Court using the Court's electronic filing system and will send such filing to all attorneys of record.

<em>/s/ Matthew J. Langley</em>