**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TIWAN ALLEN, on behalf of herself and all others similarly situated,<br>Plaintiff,<br>v.<br>MIDWEST EXPRESS CARE INC., d/b/a MIDWEST EXPRESS CLINIC,<br>Defendant. | Case No. 1:24-cv-05348<br>Judge Sharon Johnson Coleman<br>Magistrate Judge Young B. Kim |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## INTRODUCTION

Plaintiff Tiwan Allen ("**Allen**") properly abandons her claim under the Illinois Eavesdropping Act based on her visits to a public website maintained by Defendant Midwest Express Care Inc., d/b/a Midwest Express Clinic ("**Midwest Express Clinic**"). Allen, however, wrongly maintains that Midwest Express Clinics' actions violate the Electronic Communications Privacy Act (the "**Wiretap Act**") and constitute negligence and unjust enrichment. But Allen's claims fail as a matter of law for the reasons explained in Midwest Express Clinic's opening brief and as further explained below.

Allen opens her brief by stating that Midwest Express Clinic "does ***not*** deny using numerous tracking tools on its website." (Document 31 at 1.) Of course, Midwest Express Clinic could not deny the allegations in Allen's Complaint in a motion to dismiss but must accept the allegations as true for purposes of the motion. Allen reserves the right to challenge the truth of those allegations in future motions, hearings, and at trial, but for purposes of the current motion assumes their truth.

Even assuming the truth of the allegations—as Midwest Express Clinic must—Allen's allegations fail plausibly to allege claims for violation of the Wiretap Act, negligence, or unjust enrichment. The Wiretap Act claim fails because Allen acknowledges Midwest Express Clinic was a party the allegedly unlawful communications. Thus, the Wiretap Act applies only if Midwest Express Clinic acted with the purpose of committing a crime or tort. But Allen does not plausibly allege that Midwest Express Clinic knowingly disclosed her Individually Identifiable Health Information ("**IIHI**") in violation of the Health Insurance Portability and Accountability Act ("**HIPAA**"). Nor does Allen plausibly allege that Midwest Express Clinic acted with the purpose of violating HIPAA. Thus, the Wiretap Act Claim fails as a matter of law.

Allen's common-law claims likewise fail. Allen's negligence claim fails for lack of duty. And Allen's unjust enrichment claim fails because it is not an independent cause of action under Illinois law, and there is no other claim to support it. Allen also fails plausibly to allege that the information communicated to Midwest Express Clinic's website lost value through Midwest Express Clinic's action. Accordingly, the Court should dismiss Allen's Complaint.

## ARGUMENT

### I. Allen does not plausibly allege that Midwest Express Clinic intercepted her communications for the purpose of committing a crime or tort.

Allen does not challenge that Midwest Express Clinic was a party to the communications that form the basis for her Wiretap Act claim. Thus, Allen has a claim against Midwest Express Clinic only if it acted for the purpose of committing a crime or tort. 18 U.S.C. § 2511(2)(d). Allen contends that Midwest Express Clinic intercepted her communications with its website for the purpose of committing a criminal violation of HIPAA by disclosing Allen's IIHI. (Compl. ¶ 239.) But Allen's allegations fail adequately to plead the commission of a crime because the allegations

rely on an incorrect—and rejected—interpretation of IIHI, and because Allen fails to plead Midwest Express Clinic acted with the mens rea required to commit a crime.

### A. Midwest Express Clinic did not disclose Allen's IIHI.

HIPAA limits the definition of IIHI to Protected Health Information ("**PHI**") that: (1) "relates to" an individual's "past, present, or future physical or mental health or condition," the individual's receipt of "health care," or the individual's "payment for" healthcare; *and* (2) "identifies the individual" or provides "a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d(6). Allen alleges that information about her interactions with Midwest Express Clinic's website reveals IIHI because the Pixels installed on the website recorded her IP address and Facebook ID. (Compl. ¶¶ 45, 47, 49.) But the fact that Allen interacted with a public website can never establish that a particular interaction "relates to" Allen's "past, present, or future physical or mental health or condition," her receipt of "health care," or her "payment for" healthcare. *Am. Hosp. Ass'n v. Becerra*, 4:23-CV-01110-P, 2024 WL 3075865, at *13 (N.D. Tex. June 20, 2024). While Allen argues that the decision in *Becerra* is limited to unauthenticated public webpages, the decision is not so limited.

The Court makes clear that the "mere fact that an online tracking technology connects the IP address of a user's device (or other identifying information) with a visit to a webpage addressing specific health conditions or listing health care providers is not sufficient … to constitute IIHI." *Becerra*, 2024 WL 3075865, at *7. The court also rejected the Department of Health and Human Services' revision of the guidance, which stated that information constitutes IIHI if it connects an individual's IP address with a visit to a webpage with the intent to address the visitor's specific health condition or healthcare providers. *Id.* A website owner does not know the intent of those who visit

its public website. Thus, Midwest Express Clinic has not intercepted or disclosed Allen's IIHI and certainly has not done so knowingly.

**B. Midwest Express Clinic did not act with the mens rea necessary for a crime.**

Plaintiffs urge the Court to follow two recent decisions allowing federal Wiretap Act claims against healthcare providers for using digital analytical tools on their websites to survive motions to dismiss. (Document 31 at 10–11 (citing *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) and *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2024 WL 3455020, at *1 (N.D. Ill. July 18, 2024)).) Respectfully, those decisions were wrongly decided and fail to analyze the Seventh Circuit's lead opinion applying the tortious or criminal conduct exception. *Desnick v. American Broad. Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995).

In *Desnick*, the defendant television network, ABC, sent undercover "testers" with secret cameras to pose as patients to the plaintiffs' ophthalmic clinic. *Id.* at 1347–48. ABC later used the footage in a program purporting to expose that the plaintiffs committed Medicare fraud by recommending and conducting unnecessary cataract surgeries. *Id.* The plaintiffs sued ABC under the Wiretap Act.

The Seventh Circuit concluded that, even if "the program as it was eventually broadcast was [defamatory]," the crime-or-tort exception to the Wiretap Act did not apply because "there [was] no suggestion that the defendants sent the testers into the [plaintiffs'] offices for the purpose of defaming the plaintiffs ...." *Id.* at 1353. In reaching that conclusion, the court held that the exception should not be driven by an alleged legal violation, but—consistent with the statutory text—should focus on the defendant's alleged *purpose* for making the interception. *Id.* at 1353–54; *see also* 18 U.S.C. § 2511(2)(d) (providing that the exception applies only where the "communication is intercepted *for the purpose of* committing any criminal or tortious act in

violation of the Constitution or laws of the United States or of any State" (emphasis added)).

As the Seventh Circuit explained: "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely." *Id.* "*But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming plaintiffs by charging tampering with the glare machine*." *Id.* (emphasis added). "The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers." *Id.*

As one court later held in analyzing *Desnick* and the other relevant authorities on this point in the *DoubleClick* decision: "Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for interception—*its intended use*—was criminal or tortious.'" *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (emphasis added, quoting *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). "Where the purpose of a taping is not illegal or tortious, ***but the means are***, the victims must seek redress elsewhere." *Id.* (emphasis added); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. My 13, 2024) (finding tortious or criminal conduct exception did not apply to healthcare pixel litigation because plaintiffs failed to plead tortious or criminal conduct separate from the alleged recording, interception, or transmission of information); *B.K. v. Eisenhower Med. Ctr.*, No. No. C23-2092, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) *partial reconsideration* 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (same).

In *Aspen Dental*, the court incorrectly allowed the tortious or criminal conduct exception analysis to be driven by whether the alleged interception might have violated the law, rather than the defendant's alleged purpose for making the interception. *Aspen Dental Mgmt.*, 2024 WL

4119153, at *3. The court held that because the alleged conduct violated HIPAA, the exception applied, even though the actions were taken "for the purposes of financial gain." *Id.*; *accord Rush System for Health*, 2024 WL 3455020, at *5. Allowing an alleged legal violation to drive the exception analysis is contrary to the Seventh Circuit's holding in *Desnick*.

Like *Desnick*, the undisputed ***permissible purpose*** is evident from Allen's Complaint, which alleges that Midwest Express Clinic acted for "commercial advantage to increase revenue from existing patients and gain new patients." (Compl. ¶ 243.) Thus, like *Desnick*, Allen's allegations show as a matter of law why the tortious or criminal conduct exception should not apply. As numerous courts have held, alleged interceptions made for the purpose of "marketing" and "profits" fall outside the intended scope of the exception. *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518-19; *Katz-Lacabe v. Oracle Am., Inc.* 2024 WL 1471299, at *3, 5 (N.D. Cal. Apr. 3, 2024) ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception."); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *34 (S.D.N.Y. Jul. 12, 2018) (refusing to apply the exception to alleged internet tracking case).

Contrary to Allen's argument, Midwest Express Clinic does not contend that committing a crime or tort must be a defendant's sole purpose. But a crime or tort must be one of the purposes of the defendant's conduct. "A person acts purposefully when he 'consciously desires' a particular result." *Borden v. United States*, 593 U.S. 420, 426 (2021) (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)). Here, there is no plausible allegations that Midwest Express Clinic acted with "conscious desire" to disclose IIHI. Accordingly, Allen's Wiretap Act claim should be dismissed.

## II. Allen's negligence claim fails for lack of an applicable duty.

Allen alleges that Midwest Express Clinic has "duties as a medical provider." (Compl. ¶ 255.) Illinois courts, however, have not recognized a tort claim for breach of physician-patient confidentiality. *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023). Perhaps recognizing the lack of support for a negligence claim against Midwest Express Clinic as a medical provider, Allen shifts the focus in her response brief to Midwest Express Clinic's role as a data collector, relying on the Illinois Personal Information Protection Act ("**PIPA**"), rather than HIPAA, as the source of the duty.

Courts interpreting Illinois law initially found that PIPA, like HIPAA, did not support a common law duty to protect personal information. *E.g.*, *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 816 (7th Cir. 2018). After amendments to PIPA, some courts have concluded that PIPA can support a common law duty to maintain the confidentiality of certain information. *E.g.*, *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, No. 23 CV 1108, 2024 WL 182211, at *2 (N.D. Ill. Jan. 17, 2024). The Illinois Supreme Court has not directly addressed whether PIPA can support a claim for negligence.

The Illinois Supreme Court may conclude that a violation of PIPA does not support a claim for negligence because PIPA provides a comprehensive scheme for addressing data breach torts. In other contexts, the Illinois Supreme Court has concluded that a statutory remedy preempts common law remedies. *E.g.*, *Hall v. Gillins,* 13 Ill.2d 26, 147 N.E.2d 352 (1958) (declining to recognize a new common law action for wrongful death where the legislature had created a limited wrongful death remedy by statute); *Cunningham v. Brown,* 22 Ill.2d 23, 174 N.E.2d 153 (1961) (declining to recognize a new common law action for damages caused by the negligent sale of liquor where the legislature had created a limited statutory remedy by enacting the Dram Shop

Act). In fact, the Illinois Supreme Court has declared that it "hesitate[s] to recognize a new tort where the legislature has constantly acted to remedy a perceived evil in a certain area. *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 526, 675 N.E.2d 897, 904 (1996).

Even if PIPA supported a duty to safeguard protected health information, that duty would not extend to information users of a public website freely shared by interacting with that website. Unlike the cases *Wittmeyer* and the other cases Allen relies on, this case does not involve a hack of computer systems. Rather, it involves a user interacting with a website available to the public. Thus, there is no basis for a negligence claim.

## III. Allen's unjust enrichment claim fails for lack of allegations that Midwest Express Clinic impaired Allen's ability to monetize her personal information.

Allen makes virtually no effort to defend her unjust enrichment claim—devoting only half a page to Midwest Express Clinic's arguments. As explained in Midwest Express Clinic's opening brief, Allen does not allege that she had any plans to monetize her Internet browsing information or that Midwest Express Clinic's collection of that information diminished her ability to monetize it. That omission is fatal to Allen's claim for unjust enrichment because while "browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 13 CIV. 6592 (NRB), 2016 WL 5080131, at *6 (S.D.N.Y. Aug. 17, 2016), *aff'd, as amended* (May 3, 2017), 684 Fed. Appx. 32 (2d Cir. 2017); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 149 (3d Cir. 2015) (affirming dismissal of claims under the Computer Fraud and Abuse Act because plaintiff did "not allege that they sought to monetize information about their internet usage").

Allen contends that she supports the value of her information, citing paragraphs 159–77 of her Complaint. But those paragraphs discuss the value of certain information only generally, with

citations to articles and websites discussing how companies can monetize the information. Nothing in those paragraphs even suggests that Allen planned to monetize her information or is no longer able to do so.

Allen includes a string cite in footnote 13 of her brief, claiming those cases support her unjust enrichment claim. But none of those cases discuss Illinois law. *Katz-Lacabe v. Oracle Am., Inc.,* 2023 WL 6466195, at *8 (N.D. Cal. Oct. 3, 2023), *aff'd*, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023) (analyzing Florida and California law); *Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1086 (N.D. Cal. 2023), *motion to certify appeal denied,* 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (California law); *In re Grp. Health Plan Litig.,* 709 F. Supp. 3d 707, 715 (D. Minn. 2023) (Minnesota law); *C. M. v. MarinHealth Med. Grp., Inc.,* 2024 WL 217841, at *6 (N.D. Cal. Jan. 19, 2024) (California law); *Kane v. Univ. of Rochester,* 2024 WL 1178340, at *15–16 (W.D.N.Y. Mar. 19, 2024) (New York law).

But a court interpreting Illinois law expressly rejected the claim that "an individual's personal identifying information has an independent monetary value.'" *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022). Another court in this district dismissed an unjust enrichment claim in a case alleging misuse of Pixels. *Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *9. The Court held that the plaintiff "cannot rely on allegations that Aspen's conduct caused a diminution in value of their personal data." *Id.* at *8; *see also Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *9 (N.D. Ill. July 9, 2024) (dismissing unjust enrichment claim based on allegations that defendant healthcare provider "collected, used, and disclosed the plaintiffs' personal health data for its own financial gain under the guise that such information would be kept private").

Illinois law also differs from other states' laws in that "[u]njust enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). "Instead, 'if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and will "stand or fall with the related claim.'" *Bakopoulos v. Mars Petcare US, Inc.*, 20 CV 6841, 2021 WL 2915215, at *8 (N.D. Ill. July 12, 2021) (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Here, Allen contends that her unjust enrichment claim rests on the same conduct as her statutory claim and negligence claim. Because those claims fail, so too does Allen's unjust enrichment claim.

## CONCLUSION

Allen's Wiretap Act claim fails because Allen alleges that Midwest Express Clinic was a party to the relevant communications, and Allen has not plausibly alleged that Midwest Express Clinic intercepted the communication for the purpose of committing a crime or tort. Allen's negligence claims fails because she has not plausibly alleged the basis for any duty to maintain the confidentiality of her communications with a website, and Allen's unjust enrichment claim fails because she has not plausibly alleged any loss in value of her information and no other cause of action supports the derivative claim of unjust enrichment. Accordingly, the Court should dismiss Allen's Complaint.

Dated: November 6, 2024

Respectfully submitted,
**MIDWEST EXPRESS CARE INC. d/b/a MIDWEST EXPRESS CLINIC**
By: */s/ Sandy L. Morris*
One of its Attorneys

Sandy L. Morris (IL Bar No. 6270309)
Valentine Austriaco & Bueschel, P.C.
300 E. Randolph, Ste 3400
Chicago, IL 60601
(312) 238-9545
smorris@vablawfirm.com

Darren A. Craig (IN Bar. No. 25534-49)
Frost Brown Todd LLP
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
dcraig@fbtlaw.com

*Counsel for Defendant Midwest Express Care Inc.*
*d/b/a Midwest Express Clinic*

## CERTIFICATE OF SERVICE

I, Sandy L. Morris, an attorney, hereby certify that on this 6th day of November, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Sandy L. Morris*

0153485.0791071 4862-0333-0294v2